## · FAGEOL v. LYON. ,

(Court of Appeals of District of Columbia. Submitted January 18, 1923.
Decided June 4, 1923.)

No. 1564.

**Patents ☞91(4)—Evidence held not to show prior reduction to practice by junior party.**

In an interference proceeding, where the junior applicant claimed to have conceived the invention four years before the senior party filed his application, evidence *held* not to show a reduction to practice by the experiments and tests made by the junior applicant at the time of his claimed conception, so that priority was properly awarded to the senior applicant.

Appeal from the Commissioner of Patents.

Interference proceeding between Rollie B. Fageol and George A. Lyon. From a decision awarding priority to Lyon, Fageol appeals. Affirmed.

Frederick S. Duncan and John H. Hilliard, both of New York City, for appellant.

Harry L. Duncan, of Ridgewood, N. J., and Melville Church, of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. The subject-matter here involved is a hook-bolt attachment, which is designed to clamp the supporting arms of a bumper to the channel-shaped frame of an automobile and to hold the bumper fast to the frame. The invention is set forth in eight counts, of which counts 1 and 8 will serve to illustrate the purposes of the invention. Counts 1 and 8 are as follows:

1. In automobile buffers, a buffer having an impact portion, bearing members to be connected with said buffer and each having a portion adapted to extend around two outer sides of one of the automobile frame members, a one-piece retainer member co-operating with each bearing member and having a hooked end extending around a flange of one of said frame members and co-operating with an inner face thereof, which is opposite to said bearing member, and means to force together said bearing member and the hook end of said retainer to secure them to said frame member.

8. In attaching devices adapted for use in attaching an automobile buffer or the like to automobile frame members having projecting flanges, a one-piece retainer having a hooked portion adapted to extend around one of the flanges of said frame members, and having a hook end adapted to co-operate with an inner side of said frame member considerably away from the flange edge, and securing means engaging said retainer and adapted to clamp said retainer in substantially rigid supporting position with respect to the co-operating frame member.

Lyon, the appellee, filed his original application for a patent on April 12, 1916, and on a continuation of that application, filed on December 7, 1916, a patent was granted on May 21, 1918. Fageol, the appellant,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

filed his application on the 12th of November, 1917, and is therefore the junior party.

The testimony submitted by Fageol in the interference proceedings shows that he had made a test prior to August 1, 1912, of three different types of clamping hook bolts, which are covered by some or all of the counts in issue. The three types were known as the "fish clamp," the "square mouth," and the "round" or "eye-shaped." The fish clamp was tested on July 4, 1912, by using it to attach a bumper to a Ford automobile, which, with the bumper so attached, made a run from Philadelphia to Atlantic City and return on July 4, 1912. The only testimony adduced in corroboration of Fageol as to the success of that test is the testimony of Fageol's brother-in-law, Kepler, who stated that he first observed the clamps before starting from Philadelphia and that "they were good and tight." During the run and after the trip was completed he made no examination of the clamps, other than that of looking at them, but said that *as far as he could see* they were holding tight. The "fish clamps" were left on the automobile for about a week after the Atlantic City trip, and to the best of Kepler's knowledge they held firmly. Kepler, however, neglected to state the nature of his observations, and we are left in the dark as to whether he examined the clamps after the car was put in operation.

The "square-mouth" hook bolts, covered by all the counts, were used to secure a bumper to a Ford frame, and according to Fageol the bolts were severely tested by pulling and jerking the bumper. Fageol admitted that as a result of that test the hooks opened somewhat, and Kepler goes farther and says that the "square-mouth" hook bolts opened and worked loose.

The "round" or "eye-shaped" hook bolts, included in all counts and made by Oswell, were subjected to the same test as that applied to the "square-mouth" bolts, and with the same result, according to Fageol. He said, however, that the bolts held all right under ordinary running conditions. Kepler corroborated Fageol only to the extent of saying that "they held all right," but failed to describe the test to which they were subjected. If Kepler witnessed the shop test, his testimony cannot be reconciled with that of Fageol; and if he witnessed the running test, his statement furnishes no information as to the nature of his observations, or of his opportunity for making them factors necessary for the determination of the weight to be given to his testimony.

Oswell's statement as to the result of the tests was based on what Fageol told him, and are therefore of no corroborative value. Moreover, tests by pulling and jerking the bumper can hardly be accepted as subjecting the bolts to the strains and stresses which would be imposed by running the car over the inequalities of the average road. True enough, the "round" or "eye-shaped bolts" were attached to a Maxwell car and subjected to the test of a one day's drive and to the test of running the car against a pole. Fageol testified that the tests made on the Maxwell car were satisfactory; but his declarations on that subject were not corroborated, inasmuch as the witnesses brought forward for that purpose testified to nothing more than statements made by him to them.

290 F.—22

We are of the opinion that the evidence in behalf of Fageol was insufficient to establish an actual reduction to practice, and that view finds confirmation in the fact that Fageol admits that he did not consider the devices far enough developed in 1912 to file an application for a patent. Fageol patented inventions for bumpers in 1912, and had a license arrangement with the Hartford Company for their manufacture, and apparently took no interest whatever in the hook bolts from 1912 until after he saw the Lyon hook bolts in 1917. His long delay must be attributed to some other cause than lack of means. Indeed, he frankly admitted that at any time from 1912 to 1917 he could have applied for a patent, had he desired to do so.

The Examiner of Interferences, the Examiners in Chief, and the First Assistant Commissioner were agreed as to their findings of fact and the award of priority to Lyon. We find nothing in the record which would justify us in reaching a different conclusion as to the facts or the award, and the decision appealed from is therefore affirmed.